## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | **CRIMINAL NO. 09-496-14** |
| | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | **HON. EDUARDO C. ROBRENO** |
| | **:** | |
| **JOSEPH LICATA** | **:** | |
| | **:** | |

## ORDER

AND NOW, this _____ day of _____ 2012, upon consideration of defendant's DEFENDANT LICATA'S MOTION TO EXCLUDE AUDIO RECORDINGS, it is hereby ORDERED that said motion is GRANTED.


BY THE COURT:


_____

_____ , J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 09-496-14** |
| | : | |
| | : | |
| **v.** | : | |
| | : | **HON. EDUARDO C. ROBRENO** |
| | : | |
| **JOSEPH LICATA** | : | |
| | : | |

## DEFENDANT LICATA'S MOTION TO EXCLUDE AUDIO RECORDINGS

**I.     THE TAPES SHOULD NOT BE ADMITTED BASED TO NOT MEETING ALL OF THE REQUIREMENTS OF THE *STARKS* TEST.**

The seminal *Starks* case laid out the test which should be applied when determining whether or not a recording should be admitted into evidence. *See, generally, United States v. Starks*, 515 F.2d 112, 121 (3d.Cir. 1975). "With regards to the admission of tape recordings into evidence, the Third Circuit has expressed special concerns that 'Tape recordings are not readily identifiable as the original version. They are particularly susceptible of alteration, tampering, and selective editing.'" *United States v. DiMatteo*, 2008 U.S. Dist. LEXIS 3936 (E.D.Pa. 2008) citing, *United States v. Starks*, 515 F.2d 112, 121 (3d.Cir. 1975). The prongs of the *Starks* test are:

> (1) That the recording device was capable of taking the conversation now offered in evidence.
> (2) That the operator of the device was competent to operate the device.
> (3) That the recording is authentic and correct.
> (4) That changes, additions or deletions have not been made in the recording.
> (5) That the recording had been preserved in a manner that is shown to the court.
> (6) That the speakers are identified.
> (7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

*Id*.

The government's contention that "The ruling in *Starks*, both as to burden and content of proof, was substantially undermined by the later adoption of the Federal Rules of Evidence." [1] is an overstatement of the impact of 901 upon the legacy of Starks as applied by the Third circuit. While it is readily acknowledged that the passing of FRE 901 impacted the application of *Starks*, the Third Circuit courts have repeatedly cited to and applied *Starks* since the FRE's inception. *See U.S. v. Stillis*, 2006 U.S. Dist. LEXIS 41949 (E.D.Pa. 2006)(The burden of proof outlined in Rule 901 applies for the voice identification prong of *Starks* rather than "clear and convincing."); *But see U.S. v. D'Elia*, 2007 U.S.Dist. LEXIS 62658 (M.D.Pa. 2007)( The government conceded that D'Elia had a right to an opportunity to challenge the "'accuracy, authenticity, and audibility' of audio tape recordings," under *U.S. v. Starks*, though the court agreed the motion was premature.); *U.S. v. Flood*, 2007 U.S. Dist. LEXIS 33072 (W.D.Pa. 2007)(Choose to apply the more rigorous *Stark* standards rather than those set by the FRE due to lack of guidance from the Third Circuit); *Jimenez v. U.S.*, 2009 U.S.Dist. LEXIS 40358 (E.D.Pa. 2009)(J. Robreno)("The standard set forth in *Rule 901(a)* supersedes the 'clear and convincing' burden of proof enumerated by *Starks*. Nonetheless, the factors articulated in *Starks* remain relevant to the *Rule 901(a)* authenticity determination."); *U.S. v. Whitted*, 2006 U.S.Dist. LEXIS 83162 (E.D.Pa. 2006)(The court held a hearing "pursuant to the decision in *United States v. Starks*, although it is unclear if the court applied "clear and convincing" or FRE 901 in making its admissibility decision.); *U.S. v. Bankoff*, Cr No. 07-185, 2008 U.S.Dist. LEXIS 18187 (E.D.Pa. 2008)("In the absence of Third Circuit guidance on this apparent conflict, the Court applies the higher *Starks* standard and finds that the government has met this higher standard with regard to the identity of the speaker on the recordings."). Each prong on which we base a challenge is addressed in turn.

---

[1] Doc #*569* at 6.

The issues raised by the different prongs, cummutively, militate that the recordings dated May 19, 2010 and October 21, 2010 be found inadmissible as evidence against Mr. Licata.

### 1) **That the recording device was capable of taking the conversation now offered in evidence**

The government has provided no evidence demonstrating that the recording device was capable of taking the conversation that the government intends to offer in evidence.   No evidence has been provided as to the type of recording device, or the technique and/or processes used to make the recordings. It is therefore unclear what the capability of the recording device(s) was.    In fact, (as discussed in further detail below), the recordings demonstrate such inaudibility, gaps, and inequality between purportedly identical segments that there is reasonable basis to doubt that the government used a capable device(s).  Thus, absent credible evidence to be presented (for the first time) at an evidentiary hearing, the government fails to meet its burden under this prong. _See, United States v. DiMatteo_, 2008 U.S. Dist. LEXIS 3936(E.D.Pa. 2008) (the Government must lay a foundation before tape recoding evidence is deemed admissible).

### 2) <u>**That the operator of the device was competent to operate the device**</u>

In the present case, the government has provided incomplete information as to the identification of the government agents who were involved in making the recordings. Although some agents are identified on some recordings, there is no indication as to all of the agents participated in the recordings, while some recordings make no indication at all as to the agent(s) involved.   As such, the government is capable of "ambush" testimony on this issue because the defense is insufficiently informed.[2]   Furthermore, it has not been established what person was actually responsible for the operation of the recording equipment, or for what period of the recording time said person(s) held that responsibility. Thus, although the government asserts that

---

[2] _See_, Defendant Licata's Motion to Compel Discovery and Brady Material, Doc. # 682.

it will show during the Starks hearing that the operators were capable, no discovery has been provided thus far showing just how the government intends to lay the required foundation.[3] *DiMatteo*, 2008 U.S. Dist. LEXIS 3936(E.D.Pa. 2008) (regarding that the Government must lay a foundation before tape recoding evidence is deemed admissible).

### 3)   That changes, additions or deletions have not been made in the recording

Although this is not a high burden, the Government has provided no evidence to indicate that there has not been any changes to the original recording. "To show lack of material alteration, the Government only needs to show it took reasonable steps to prevent tampering; it need not exclude all possibilities of tampering. *DiMatteo*, 2008 U.S. Dist. LEXIS 3936(E.D.Pa. 2008). (internal citations omitted). If it is shown that the recordings have been altered, then the court should find that they are not admissible. This is parallel to the argument regarding sealing, in which if a technical violation is shown, then the material should be deemed inadmissible. *See, infra, at IV.*

An audio recording dated May 19, 2010 produced under discovery marked "Ligambi 007" is vastly different from the recording of the same date released subsequently as *Jencks* material.[4] Between 1:07:35 and 1:10:35 of the recording provided with the *Jenks* material, a discussion is clearly audible that corresponds to the government's transcript and allegations that Mr. Licata participated in discussions pertaining "making" ceremonies.  In contrast, the recording of the same date that was released pre-*Jencks* is largely inaudible in regards to Mr. Licata, and the segment cited above is not perceivable.  Thus, the conversation in the transcript provided with Jencks material is heard for the first time in the post-Jencks recording of the same May 19, 2010

---

[3] Id.
[4] Marked as, "Ligambi US Pretrial Tape List - Audio & Draft Transcripts - Disk 4 – July 6, 2012".

discussions.  Moreover, the pre-Jencks recording is a total of 2:54:43s long (adding segment 1 –

2:49:04s, segment 2 – 1:47s and segment 3 – 3:52s), the same conversation in post-Jencks

production is a total of 3:31:14s long, or at least 3:23:13s long.  Either way, the same

conversation varies a half hour in length.  The two recordings therefore cannot be identical,

which is demonstrated by the time difference alone.  The overall poor quality of the recordings,

particularly the first one) compounds the difference between the two recordings.

 The recordings dated October 21, 2012, while apparently identical pre-Jencks and post-

Jencks, is fraught with unexplained gaps of silence and portions of poor quality.  For example, a

prolonged silence exists at 45:45 to 47:23 (one minute and 38 seconds without sound).


 To reiterate, "With regards to the admission of tape recordings into evidence, the Third

Circuit has expressed special concerns that 'Tape recordings are not readily identifiable as the

original version. They are particularly susceptible of alteration, tampering, and selective editing.'"

*United States v. DiMatteo*, 2008 U.S. Dist. LEXIS 3936(E.D.Pa. 2008) *citing United States v.*

*Starks*, 515 F.2d 112, 121 (3d.Cir. 1975). It would seem that the presence of material alterations

to the recordings, and unexplained gaps, would go to the very heart of the Third Circuit's

concerns regarding tapes that caused the Court to promulgate the *Starks* factors.


 **4)  That the speakers are identified**

 The government typically must produce enough evidence to convince a reasonable jury

that the speakers are properly authenticated for recordings to be admissible *U.S. v. Stillis*, 2006

U.S. Dist. LEXIS 41949 (E.D.Pa. 2006)(*internal citations omitted*). F.R.E. 901(a) which

provides, "[t]he requirement of authentication or identification as a condition precedent to

admissibility is satisfied by evidence sufficient to support a finding that the matter is what its proponent claims." *U.S. v. Tubbs*, 1990 U.S.Dist. LEXIS 2761, *7 (E.D.Pa. 1990).

Although the government has made certain allegations regarding who are the speakers on the recordings dated May 19, 2010 and October 21, 2010, it has failed thus far to provide any evidentiary basis for these identifications.[5] These recordings are of multiple conversations occurring simultaneously, in a crowded room, involving persons who in some cases have similar sounding voices. As they are just audio recordings, it is only speculation as to whom each of the individuals is addressing themselves, and to what statements they are actually responding. The government informant who wore the wire for these recordings (Mr. Stefanelli), is deceased and unable to testify. Therefore, identifications of the speakers and of the conversations in which they were participating are highly speculative.

**5)  That the conversation elicited was made voluntarily and in good faith, without any kind of inducement**

In order for a recording from a wiretap to be admissible, one of the parties must have voluntarily consented to the taping. "Under *18 U.S.C. § 2511(2)(c)*, it is not unlawful for a person acting under color of law to intercept a communication, where a party to that communication has given prior consent. Because of *section 2511(1)(d)*, the United States cannot *use* intercepted communications in a criminal prosecution unless a party to the communication first consented to the interception pursuant to *section 2511(2)(c)*." *U.S. v. Antoon*, 933 F.2d 200, 203 (3d.Cir. 1991). Whether or not consent was voluntary is determined through a Fourth Amendment analysis, directing the court to determine under the totality of the circumstances

---

[5] Defense counsel acknowledges that the government has stated that they intend to provide some basis at the *Starks* hearing, scheduled August 9, 2012.

"whether…the consent was an exercise of free will or whether the actor's free will 'has been overborne and his capacity for self-determination critically impaired.' Consent to a wiretap is not voluntary where 'it is coerced, either by explicit or implicit means or by implied or covert force.'" *Id.* at 203-204 (internal citations omitted). The Third Circuit in *Kelly* established that consent is not involuntary if the consenting individual is seeking personal benefit. *Id.* at 205. Numerous cases have established that consent is voluntary even if the person giving it hopes to get some sort of government break on another case, or financial remuneration. 1996 U.S.Dist. LEXIS 43.

  The Government has not provided a solid basis for finding Mr. Stefanelli's participation was truly voluntary, and he unable to be questioned regarding his voluntariness by the defense.

## II.   THE RECORDINGS SHOULD NOT BE ADMITTED BECAUSE SUBSTANTIAL PORTIONS ARE INAUDIBLE

  "A trial judge has 'considerable discretion regarding the admissibility of a tape recording where there is a serious question of its audibility.'" *U.S. v. Dimatteo*, 2008 U.S.Dist. LEXIS 3936, 24-25 (E.D. Pa. 2008)(internal citations omitted). A recording can be found to be inadmissible if "[U]nintelligible portions are so substantial as to render the recording as a whole untrustworthy." *Id.* citing *U.S. v. DiSalvo*, 34 F.3d. 1204, 1220 (3d Cir. 1994). The case law in the Third Circuit does not give a lot of guidance as to what were the actual standards applied by the Court in previous cases making determinations as to whether a recording was so inaudible as to be untrustworthy. In *U.S. v. Davis*, 235 F.R.D. 292, (W.D.Pa. 2006), the District Court of the Western District of Pennsylvania found that certain recordings were untrustworthy due to the fact that while the comments of the confidential informant were audible, the alleged incriminating responses were inaudible, making the recordings untrustworthy. *Id.* at 309. The District Court in Delaware, however, referencing the Third Circuit of Appeals, stated that "when

a defendant makes a 'colorable attack' on the authenticity and accuracy of a tape recording, the burden is on the government to produce by clear and convincing evidence as  the authenticity and accuracy of the recording prior to its admission at trial." *U.S. v. Weeks*, 2009 U.S.Dist. LEXIS 5841 *18 (De. 2009).

In the present cases, there are serious issues with the audibility of the tapes. In comparing the transcript provided with the *Jenks* material, to the *"Ligambi 007"* recording provided with the initial discovery materials, the defense found that it was unable to find the proffered transcript reflected in what was intelligible on the recording to the untrained ear. The fact that different listeners of the recording find that there are different interpretations of what is being said points to the fact that there exists a "serious question of audibility." Furthermore, as *discussed*, *infra*, there are unexplained silences and gaps in the October 21, 2010 recording. This would seem to indicate that the recording as a whole is untrustworthy.[6]  Due to the audibility problems they present, and the ways in which these problems leave the audio recordings open to multiple interpretations, they should be found inadmissible.

## II.    THE GOVERNMENT MUST SHOW THAT THEY MET THE SEALING REQUIREMENTS FOR THE TAPES TO BE ADMISSIBLE

18 U.S.C. § 2518(8)(a) sets forth certain requirements for the sealing of recordings after they have been made. *U.S. v. Riggi*, 73 F.Supp. 1410 (N.J. 1990).

> The contents of any wire, oral, or electronic communication intercepted by any means authorized by this chapter [18 USCS §§ 2510 et seq.] shall, if possible, be recorded on tape or wire or other comparable device. The recording of the contents of any wire, oral, or electronic communication under this subsection shall be done in such way as will protect the recording from editing or other alterations. Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions. Custody of the recordings shall be wherever the judge orders.

---

[6] This is not an exhaustive list of the audibility issues present on the tapes.

18 U.S.C. § 2518(8)(a).

　　　If the government fails to show that these requirements are met, because if they are not, the recordings are subject to exclusion.  *"*In cases where tapes of the intercepted communications are not sealed as soon as was practical, the Government must provide a satisfactory explanation for the sealing delay.  Such a proffered explanation must be the actual reason for the delay and not a *post hoc* justification. U.S. v. Robinson, 513 F.Supp. 2d 169 (W.D.PA 2007)(*internal citations omitted*). "The Court held that section 2518(8)(a) required that the Government establish good cause for sealing delays that occur, that the Government establish on the evidence presented and submissions made in District Court, and that the explanation be the actual cause of the delay." *U.S. v. Riggi,* 73 F.Supp. 1410 NJ 1990, <u>*citing,*</u> *U.S. v. Ojeda Rios,* 110 S.Ct. 1845, 1850 (1990).  These reasons must be objectively reasonable. *Id.* "[B]rief gaps between the expirations of orders and their extensions do not trigger the sealing requirements of *section 2518(8)(a)...* [T]he determination of whether a particular gap is insignificantly long depends on the circumstances and is thus a question of fact for the district court," *U.S. v. Carson*, 969 F.2d 1480, 1500-1501 (3d.Cir. 1992).


　　　　　　　Respectfully Submitted,

　　　　　　　　/s/　　　　　　　　　　　　　.
　　　　　　　　Giovanni O. Campbell, Esquire

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 09-496-14 |
| | : | |
| | : | |
| v. | : | |
| | : | HON. EDUARDO C. ROBRENO |
| | : | |
| JOSEPH LICATA | : | |
| | : | |

## CERTIFICATE OF SERVICE

Giovanni O. Campbell, Esquire, hereby certifies that a true and correct copy of Defendant Joseph Licata's DEFENDANT LICATA'S MOTION TO EXCLUDE AUDIO RECORDINGS was filed on this date and caused to be served upon all interested counsel via the Court's electronic filing system.

Date:  July 17, 2012.          /s/                                     .
                               Giovanni O. Campbell, Esquire
                               Attorney for Joseph Licata