IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| | : | NO. 09-00496-01, -03, -04, |
| | : | -05, -08, -10, -11, -14, -15 |
| v. | : | |
| | : | |
| JOSEPH LIGAMBI, | : | |
| ANTHONY STAINO, JR., | : | |
| JOSEPH MASSIMINO, | : | |
| GEORGE BORGESI, | : | |
| DAMION CANALICHIO, | : | |
| LOUIS BARRETTA, | : | |
| GARY BATTAGLINI, | : | |
| JOSEPH LICATA, and | : | |
| LOUIS FAZZINI, | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              AUGUST 22, 2012

I.   **INTRODUCTION**

Defendant Massimino filed a Motion to Suppress. Def.'s Mot. 1, ECF No. 576. He seeks to suppress an outgoing prison letter from the Defendant, which New Jersey prison officials seized. Id. He contends that prison officials intercepted, opened, and read this letter in violation of New Jersey prison regulations. Id. The Government responded and argues that

1

Defendant fails to identify and describe the nature and contents of the letter with sufficient specificity to allow proper review of his claim, and moreover, fails to state a legal basis under federal law to justify the suppression of a prison letter. Gov't's Resp. 1, ECF No. 728.[1] For the following reasons, the Court will deny Defendant's Motion.

## II. BACKGROUND

In accordance with the Court's Third Scheduling Order, the Government submitted its Pretrial Evidence List on June 22, 2012 (ECF No. 608), identifying the items of physical evidence, documents and categories of documents, business records, and photographic and videotape evidence, which the Government may introduce in its case-in-chief. Included within this list was Defendant Massimino's prison mail obtained from South Woods State Prison, New Jersey, and Southern State Correctional Facility, Delmont, New Jersey. Gov't's Resp. 2. The Government intends to introduce some of Defendant Massimino's prison mail

---

[1] Defendant identified the specific letter during the course of oral argument on August 9, 2012, as one addressed to Victim D. The Court ordered the Government to supplement its memorandum in response addressing the specific letter identified and setting forth the rationale or justification, if any, to open, read, or censor Defendant Massimino's identified correspondence. Order, August 13, 2012, ECF No. 783. As the letter has now been appropriately identified, the Court may properly review the substance of Defendant's motion.

as evidence to prove that he continued to participate in the affairs of the Philadelphia La Cosa Nostra ("LCN") Family even while incarcerated in state prison in New Jersey, both personally and through others. Id. Defendant Massimino seeks to suppress one specific item of prison mail: a letter dated August 22, 2005, from Defendant Massimino to Archie Rosenberg ("the Rosenberg Letter"). Gov't's Supplement 1, ECF No. 796.

Count One of the Third Superseding Indictment avers that Defendant Massimino agreed to associate with and participate in the affairs of the Philadelphia LCN Family enterprise through a pattern of racketeering activity that included the collection of extensions of credit through extortionate means, in violation of 18 U.S.C. 894(a)(1). In particular, Count One avers the following:

> Defendant MASSIMINO made extensions of credit to Victim D and attempted to collect those debts using extortionate means. On one occasion in 2005, while defendant MASSIMINO was incarcerated, defendant MASSIMINO sent a message to Victim D to repay Victim D's debt immediately. Defendant MASSIMINO threatened that Victim D wouldn't "be able to hide anywhere in the U.S."

Third Superseding Indictment, Count One, ¶ 26.D, ECF No. 723. The Government states that the Rosenberg Letter is the message referred to in Count One and argues it is competent proof of the racketeering charge against Defendant Massimino. Id. at 2-3.

The Government proffers evidence that the New Jersey Department of Corrections opened and read the Rosenberg Letter in accordance with its regulations pertaining to outgoing correspondence from inmates that contain disapproved content. Id. at 3; see Melendez Aff. ¶ 2, Gov't's Supplement Attach. A. Specifically, Officer Melendez, a Senior Investigator in the Special Investigation Division, knew that inmate Defendant Massimino was affiliated with organized crime, namely the Philadelphia LCN Family, and read, opened, and forwarded to the Government the Rosenberg Letter pursuant to a federal grand jury subpoena issued by the U.S. District Court for the Eastern District of Pennsylvania ("EDPA") and directed to the Custodian of Records at the South Woods State Prison in New Jersey. Gov't's Supplement 3; Melendez Aff. ¶ 3; see also Grand Jury Subpoena 1, Gov't's Supplement Ex. 1.

**III. LEGAL STANDARDS**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. The Fourth Amendment protects against governmental invasions into a person's "legitimate expectation of privacy," which encompasses two discrete questions.

4

> The first is whether the individual, by his conduct, has "exhibited an actual (subjective) expectation of privacy,"-whether, in the words of the Katz majority, the individual has shown that "he seeks to preserve [something] as private." The second question is whether the individual's subjective expectation of privacy is "one that society is prepared to recognize as reasonable,"—whether, in the words of the Katz majority, the individual's expectation, viewed objectively, is "justifiable" under the circumstances.

Smith v. Maryland, 442 U.S. 735, 740 (1979) (quoting Katz v. United States, 389 U.S. 347, 351, 353 (1967)).

While a prison inmate is not stripped of constitutional protections at the prison gate, any reasonable expectation of privacy a prison inmate retains is of diminished scope. Bell v. Wolfish, 441 U.S. 520, 545-47 (1975). "The fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights." Id. at 546.[2]

Prison officials are authorized under the regulations of the New Jersey Department of Corrections to open, read or censor any outgoing, non-legal prison correspondence addressed to someone other than public officials, if there is reason to believe that the correspondence contains "disapproved content." N.J. Admin. Code § 10A:18-2.7 (2012). The definition of

---

[2] The Court in Bell v. Wolfish stated that this principle was equally applicable to pretrial detainees and convicted prisoners. 441 U.S. at 546.

"disapproved content" includes, among other things, "information which appears to be written in code" and "information concerning activities within or outside the correctional facility which would be subject to criminal prosecution under the laws of New Jersey or the United States." N.J. Admin. Code § 10A:18-2.14.[3]

---

[3] The full regulation concerning disapproved correspondence is as follows:

> (a) Any correspondence for an inmate may be withheld in the mail room or taken from an inmate's possession by the correctional facility Administrator, designee, or custody staff if it falls within one of the following categories:
>
> 1. The correspondence contains material, which is detrimental to the security and/or order of the correctional facility because it incites violence based upon race, religion, creed or nationality and a reasonable inference can be drawn, based upon the experience and professional expertise of correctional administrators, that it may result in the outbreak of violence within the facility;
>
> 2. The correspondence contains information on the following subjects that, based upon the experience and professional expertise of correctional administrators and custody staff and judged in the context of a correctional facility and its paramount interest in security, order and rehabilitation, is detrimental to the secure and orderly operation of the correctional facility:
>
> > i. Explosives;
> > ii. Weapons;
> > iii. Controlled dangerous substances;
> > iv. Escape plans;
> > v. Lock picking or locking devices;
> > vi. Depictions or descriptions of procedures for the brewing of alcoholic beverages, or the manufacture of drugs; or

6

vii. Anything that might pose a threat to the safety, security or orderly operation of the correctional facility;

3. The correspondence contains information which appears to be written in code;

4. The correspondence contains information concerning activities within or outside the correctional facility which would be subject to criminal prosecution under the laws of New Jersey or the United States;

5. The correspondence incites violence or destructive or disruptive behavior toward:

i. Law enforcement officers;
ii. Department of Corrections or contract vendor personnel;
iii. Correctional facility inmates, visitors and/or volunteers; or
iv. Correctional facility protocols, programs or procedures; or

6. The correspondence contains material, which, based upon the experience and professional expertise of correctional administrators and judged in the context of a correctional facility and its paramount interest in maintaining safety, security, order and rehabilitation:

i. Taken as a whole, appeals to a prurient interest in sex;
ii. Lacks, as a whole, serious literary, artistic, political or scientific value; and
iii. Depicts, in a patently offensive way, sexual conduct, including patently offensive representations or descriptions of ultimate sexual acts, masturbation, excretory functions, lewd exhibition of the genitals, child pornography, sadism, bestiality or masochism.

N.J. Admin. Code § 10A:19-2.14.

In Stroud v. United States, the Supreme Court held that interception by prison personnel and use in evidence by the prosecution of certain letters containing incriminating material written by a federal prisoner did not violate the Fourth Amendment rights of the accused. 251 U.S. 15, 21-22 (1919). The Court reasoned that the letters were voluntarily written and that no threat or coercion was used to obtain them. The Court further stated that the letters came into the possession of officials of the penitentiary under established practice, reasonably designed to promote the discipline of the institution. Id. at 21-22.

More recent cases since Stroud have held that a prisoner's Fourth Amendment rights are not violated when prison officials inspect non-privileged mail. See United States v. Whalen, 940 F.2d 1027, 1034-35 (7th Cir. 1991) (holding that because prison officials were permitted to examine inmate mail to ensure that the mail did not interfere with the orderly running of the prison, contained no threats, and did not facilitate criminal activity, there was no expectation of privacy in mail that prisoners were required to leave unsealed); United States. v. Kelton, 791 F.2d 101, 103 (8th Cir. 1986) (prisoner's Fourth Amendment rights were not violated when prison official inspected and copied prisoner's outgoing mail);

Smith v. Shimp, 562 F.2d 423, 426-27 (7th Cir. 1977) (reasoning that when a pretrial detainee sends non-privileged mail he has a reduced reasonable expectation of privacy due to the possibility of inspection by prison officials). Modern cases have limited Stroud to situations in which prison officials have seized outgoing letters in the exercise of legitimate government interests. See United States v. Brown, 878 F.2d 222, 225 (8th Cir. 1989); Meadows v. Hopkins, 713 F.2d 206, 208-11 (6th Cir. 1983). Nonetheless, Stroud "still controls cases in which such seizures are prompted by reasonable justification." Brown, 878 F.2d at 225.

**IV. DISCUSSION**

Defendant Massimino asserts that his Fourth Amendment constitutional rights were violated by the seizure of an outgoing prison letter by New Jersey prison officials. He argues that the Rosenberg Letter and its contents do not fit into any of the categories described as "disapproved content" and that Defendant Massimino was only attempting to deal with "a civil debt and was trying to deal with it in lawful fashion." Def.'s Mot. 4. He concludes that "the prison officials violated their own very rules and for no apparent reason, other than, perhaps to give the Defendant a hard time." Id. at 5. The Government

9

argues in response that Defendant cannot state a Fourth Amendment violation to justify the suppression of his prison correspondence because as an inmate he did not have an expectation of privacy in his personal outgoing correspondence. Gov't's Resp. 5; Gov't's Supplement 4.

The New Jersey prison regulations permit prison officials to open, read, and censor outgoing inmate correspondence where they have reason to believe that the correspondence may contain information concerning criminal activities. The very existence of these regulations provide support for the conclusion that although prisoners retain some Fourth Amendment rights while in prison, these rights are limited by institutional security needs and the prisoner's own reduced expectation of privacy. Here, the record shows that Defendant Massimino's reputation and involvement with the LCN as known to Officer Melendez and the Department of Corrections, coupled with the necessity to comply with a federal grand jury subpoena issued in connection with a criminal investigation in the EDPA, provided the New Jersey prison officials with "reason to believe" that Defendant Massimino's outgoing mail may contain "disapproved content." See Melendez Aff. ¶¶ 2-3. Thus, it is clear that the New Jersey prison officials complied with the regulations governing an inmate's outgoing correspondence.

Nonetheless, the ultimate question is whether Defendant Massimino had a legitimate expectation of privacy in his outgoing non-privileged mail. The justification prison officials have to read "disapproved correspondence" in light of the legitimate objectives of the prison system, substantially diminishes, if not eliminates, the actual expectation of privacy Defendant Massimino might have had in the contents of envelopes submitted for non-privileged mailing. Furthermore, due to the possibility that prison officials could inspect his non-privileged mail under established practice, reasonably designed to promote the discipline of the institution, Defendant Massimino also cannot establish an objectively reasonable expectation of privacy in this correspondence. See Smith, 562 F.2d at 427 ("What the pretrial detainee places in such envelopes he knowingly exposes to possible inspection by jail officials and consequently yields to reasonable search and seizure." (citing Katz, 389 U.S. at 351)). Thus, Defendant Massimino fails to establish a legitimate expectation of privacy that has been invaded by unreasonable government action sufficient to establish a Fourth Amendment violation. Because prison officials acted pursuant to New Jersey prison regulations, and acted within the limits of the Fourth Amendment, suppression of the Rosenberg Letter is not warranted.

**V. CONCLUSION**

The Court denies Defendant Massimino's Motion to Suppress. An appropriate order will follow.