IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| | : | NO. 09-00496-01, -03, -04, |
| v. | : | -05, -08, -11, -14, -15 |
| | : | |
| JOSEPH LIGAMBI, | : | |
| ANTHONY STAINO, JR., | : | |
| JOSEPH MASSIMINO, | : | |
| GEORGE BORGESI, | : | |
| DAMION CANALICHIO, | : | |
| GARY BATTAGLINI, | : | |
| JOSEPH LICATA, and | : | |
| LOUIS FAZZINI, | : | |
| | : | |
| Defendants. | : | |


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    SEPTEMBER 13, 2012


I.    **INTRODUCTION**

        Several Defendants have challenged the Government's
use of tape recordings created by then-acting Government
informant, Nicholas Stefanelli (the "Stefanelli Tapes").
Defendant Ligambi filed a Motion to Exclude Recordings Made by
Deceased Government Informant Nicholas Stefanelli.  ECF No. 560.
Defendant Fazzini filed two motions, including a Motion to
Suppress Audio Recordings and a Motion to Exclude Tape Recorded
Conversations Made by Deceased Government Informant Nicholas
Stefanelli.  ECF Nos. 685, 686.  The Court held hearings on

August 9, 2012, and August 17, 2012, and heard argument on these motions. As each relates to the admissibility of the Stefanelli Tapes, the Court will address the motions collectively.[1]

For the reasons that follow, the Court will deny in full Defendant Ligambi's Motion to Exclude Recordings Made by Deceased Government Informant Nicholas Stefanelli. ECF No. 560. The Court will also deny Defendant Fazzini's Motion to Suppress Audio Recordings. ECF No. 685. And lastly, the Court will also deny in full Defendant Fazzini's Motion to Exclude Tape Recorded Conversations Made by Deceased Government Informant Nicholas Stefanelli. ECF No. 686.

## II.  BACKGROUND

Defendants Ligambi and Fazzini are two of fourteen Defendants charged in a fifty-two count Third Superseding Indictment. ECF No. 723. This case emerged from a criminal investigation spanning ten years and was twice designated a

---

[1]      In this memorandum, the Court is not ruling on any challenges that Defendants Ligambi and Fazzini raise under this Circuit's decision, United States v. Starks, 515 F.2d 112 (3d Cir. 1975). Pursuant to this Court's Order (ECF No. 808), dated August 20, 2012, all Starks-related objections in Defendant Ligambi's and Defendant Fazzini's motions (ECF Nos. 560, 686) were referred to Magistrate Judge Rice, and Judge Rice has overruled these objections. See Order, Sept. 5, 2012, ¶ 4, ECF No. 860 (Rice, J.) (disposing of Starks-related authentication issues). Therefore, the Order of the Court attached hereto constitutes the final and full resolution of issues not referred to Judge Rice.

complex case due to the number of Defendants and the nature and quantity of evidence, which includes over 14,000 intercepted wire and oral communications. See ECF Nos. 177, 520. Among other counts, Defendants are charged with conspiring to conduct and participate in the conduct of the affairs of the criminal enterprise, the Philadelphia La Cosa Nostra ("LCN") Family, through a pattern of racketeering activity and through the collection of unlawful debts. The case is specially listed for trial on October 9, 2012.[2]

On July 6, 2012, in accordance with the Court's Third Scheduling Order (ECF No. 521), dated May 15, 2012, the Government submitted its Pretrial Tape List, identifying the recordings of intercepted communications that the Government may introduce in its case-in-chief. Gov't's Tape List, ECF No. 650. This list included the Stefanelli Tapes, made by then-acting informant, Nicholas Stefanelli, on May 19, 2010 (the "May 2010 tape"), and later on October 21, 2010 (the "October 2010 tape"). Id.

---

[2] The case was severed between those defendants charged with violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the "RICO defendants," and those who were not charged with RICO violations, the "non-RICO defendants." Of the eleven RICO defendants, eight are proceeding to trial (three have pleaded guilty). The non-RICO defendants' trial will be scheduled after the RICO defendants' trial has concluded.

The Government has since provided the United States'
Annotated Exhibits in Support of Its Motion in Limine to Admit
Racketeering Evidence (the "Annotated Exhibits"). These
Annotated Exhibits include transcribed portions of the
Stefanelli Tapes that the Government may introduce at trial,
together with the evidentiary purposes for which the Government
intends to use the evidence. Gov't's Exs. 1, 2.

Preceding the Third Superseding Indictment, in March
2012, the Government disclosed the existence of an additional
two-year investigation of the Philadelphia LCN Family and other
LCN families, involving Nicholas Stefanelli, a "made" member of
the New York Gambino LCN Family who had agreed to cooperate with
the Government and secretly record meetings and conversations
with organized crime members. Gov't's Resp. to Def. Ligambi's
Mot. 2, ECF No. 569. Stefanelli committed suicide in March
2012.

The May 2010 tape recorded a meeting between members
of the New York Gambino LCN Family and members of the
Philadelphia LCN Family, at the La Griglia Restaurant, in
Kenilworth, New Jersey. During this meeting, which lasted
approximately five hours, the participants engaged in wide-
ranging discussion of both past and present LCN families and
their activities.

The October 2010 tape recorded a meeting between members of the Philadelphia LCN Family, at the American Bistro, in Nutley, New Jersey. Similar to the May 2010 tape, during this meeting, the participants discussed past and present activities of LCN families.

Defendant Ligambi challenges the Government's use of the Stefanelli Tapes against him, and seeks to exclude these recordings as inadmissible testimonial evidence under the Confrontation Clause of the Sixth Amendment of the United States Constitution.[3] Def. Ligambi's Mot. 2-3, ECF No. 560;[4] see also Def. Ligambi's Mem., ECF No. 805.

Defendant Fazzini raises two challenges to the Government's use of the Stefanelli Tapes against him. First, Defendant Fazzini seeks to suppress this evidence as a violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, codified at 18 U.S.C. §§ 2510-2522 (2006) ("Title III"). Def. Fazzini's Mot. to Suppress 2-3, ECF No. 685.[5]

---

[3] In this motion, Defendant Ligambi also raises Starks challenges. However, as noted above, the Court referred these Starks challenges to Judge Rice.

[4] Defendant Ligambi did not include page numbers in his motion. The pincite references to which the Court refers are those assigned to the motion when filed with the Case Management/Electronic Case Filing system.

[5] Defendant Fazzini did not include page numbers in either of his motions. The pincite references to which the

Defendant Fazzini asserts that, because none of the defendants consented to the recording and because Nicholas Stefanelli is deceased, the Government cannot demonstrate that at least one party consented to the interception of the communications.  Id. Accordingly, Defendant Fazzini argues, absent proof of consent as required by §§ 2511(2)(c) and 2516, using the Stefanelli Tapes against him would violate § 2515 of Title III.  Id. Second, Defendant Fazzini seeks to exclude the Stefanelli Tapes, asserting that, without Nicholas Stefanelli, the Government cannot authenticate the voices on the tapes as required by Federal Rule of Evidence 901(a).[6]  Def. Fazzini's Mot. to Exclude 3-5, ECF No. 686.[7]

In accordance with the Court's Third Scheduling Order, the Court conducted a hearing regarding these motions on August 9, 2012, which continued on August 17, 2012.  After having

Court refers are those assigned to these motions when filed with the Case Management/Electronic Case Filing system.

[6]      During oral argument regarding this motion, Counsel for Defendant Licata raised a Confrontation Clause objection to relying on statements of now-deceased Stefanelli as the basis for identifying the voices of the speakers on the Stefanelli Tapes.  As this argument relates to Defendant Fazzini's second motion regarding the admissibility of the Stefanelli Tapes, the Court will address it as well.

[7]      In this motion, Defendant Fazzini also raises Starks challenges.  However, as noted above, the Court referred these Starks challenges to Judge Rice.

6

reviewed the parties' submissions and having heard oral

argument, these motions are now ripe for disposition.


**III. DEFENDANT LIGAMBI'S MOTION TO EXCLUDE RECORDINGS MADE BY DECEASED GOVERNMENT INFORMANT NICHOLAS STEFANELLI (ECF NO. 560)**

First, the Court will address Defendant Ligambi's

motion to exclude the Stefanelli Tapes under the Confrontation

Clause of the Sixth Amendment.  The Sixth Amendment provides

that "[i]n all criminal prosecutions, the accused shall enjoy

the right . . . to be confronted with the witnesses against

him."  U.S. Const. amend. VI.  Under the Sixth Amendment,

"testimonial" hearsay statements may not be introduced against a

defendant unless the declarant is unavailable at trial and the

defendant had a prior opportunity to cross-examine the

declarant.  Crawford v. Washington, 541 U.S. 36, 68 (2004).

While the lynchpin of the Crawford decision is the distinction

between testimonial and nontestimonial hearsay, the Court

expressly declined to provide a comprehensive definition of

"testimonial statements."  Id.  The Court did provide

benchmarks, however, through the following examples:

> Various formulations of this core class of testimonial
> statements exist:  ex parte in-court testimony or its
> functional equivalent-that is, material such as
> affidavits, custodial examinations, prior testimony
> that the defendant was unable to cross-examine, or
> similar pretrial statements that declarants would
> reasonably expect to be used prosecutorially;

extrajudicial statements . . . contained in formalized
testimonial materials, such as affidavits,
depositions, prior testimony, or confessions;
statements that were made under circumstances which
would lead an objective witness reasonably to believe
that the statement would be available for use at a
later trial. These formulations all share a common
nucleus and then define the Clause's coverage at
various levels of abstraction around it.

Id. at 51-52 (internal citations and quotations omitted).

Notwithstanding, in Crawford the Supreme Court clarified that

the Confrontation Clause "does not bar the use of testimonial

statements for purposes other than establishing the truth of the

matter asserted." Id. at 59 n.9 (citation omitted).

In United States v. Hendricks, the United States Court

of Appeals for the Third Circuit interpreted for the first time

the meaning of "testimonial evidence" as articulated in the

Crawford decision, and determined its application to lawfully-

obtained wiretap evidence and evidence of consensually-recorded

conversations between defendants and a murdered confidential

informant. 395 F.3d 173, 180-84 (2005). The Third Circuit held

that the Title III recordings, by virtue of them being

surreptitiously monitored, were not testimonial in nature and

thus did not violate the Confrontation Clause. Id. at 182.

As to the consensual recordings made by the deceased

confidential informant,[8] the Third Circuit concluded that the

---

[8]     The Third Circuit noted that the consensual recordings
were "face-to-face conversations that were recorded by [the

party admission and co-conspirator portions of the consensual

recordings were not testimonial and thus, assuming compliance

with the Federal Rules of Evidence, were admissible.  Id. at

183-84.  Further, the Court held that the statements of the

confidential informant contained in the recordings were also

admissible, concluding that:

> [I]f a Defendant or his or her coconspirator makes
> statements as part of a reciprocal and integrated
> conversation with a government informant who later
> becomes unavailable for trial, the Confrontation
> Clause does not bar the introduction of the
> informant's portions of the conversation as are
> reasonably required to place the defendant or
> coconspirator's nontestimonial statements into
> context.

Id. at 184.

Significantly, in Hendricks, the Third Circuit did not

reach the issue of whether the statements of the confidential

informant were testimonial but instead held that the Government

should be permitted to introduce the confidential informant's

statements to put the conversations "into perspective and make

them intelligible to the jury and recognizable as admissions."

Id. (internal citations and quotations omitted).  The Court

reasoned that the government did not seek to introduce the

statements of the confidential informant to establish their

truth, but only to provide context to the conversations.  Id.

---

confidential informant] wearing a taping device provided by the
Government."  Hendricks, 395 F.3d at 182.

Nonetheless, the Court opined that, in accordance with Crawford, even if these statements were held to be testimonial, it would not prevent the government from introducing the statements for a purpose other than establishing the truth of the matters contained therein. Id. at 183.

The Third Circuit recently revisited this issue in United States v. Berrios, as applied to a Title III communication. 676 F.3d 118 (3d Cir. 2012). In Berrios, the Third Circuit again noted that "the Confrontation Clause protects the defendant only against the introduction of testimonial hearsay statements." Id. at 126 (second emphasis added) (citing Michigan v. Bryant, 131 S. Ct. 1143, 1152-53 (2011); Whorton v. Bockting, 549 U.S. 406, 419-20 (2007); Davis v. Washington, 547 U.S. 813, 823-24 (2006)).

In his motion to exclude the Stefanelli Tapes, Defendant Ligambi argues that the recordings that Stefanelli made are testimonial in nature, and because Stefanelli is unable to testify at trial—and therefore unavailable for cross-examination—these statements must be excluded under the Supreme Court's holding in Crawford. Def. Ligambi's Mot. 3. At the Court's request, following the August 17, 2012 hearing, Defendant Ligambi submitted a supplemental memorandum directing the Court's attention to a list of twenty-nine portions of the

Stefanelli Tapes, in which he contends that Stefanelli's

statements are testimonial.  Def. Ligambi's Mem. 1-2.[9]

The Government responds that it is not offering

Stefanelli's statements for their truth.  Gov't's Resp. to Def.

Ligambi's Mem. 2, ECF No. 826.  Instead, the Government states

that it offers these statements to provide "context and meaning

of the statements by the co-conspirators."  Id. at 3.

The Third Circuit's reasoning in Hendricks is

dispositive.  In Hendricks, the Court rejected the defendants'

Confrontation Clause objection and reversed the District Court's

ruling suppressing the recordings, holding that the cooperating

witness's statements made during a consensually recorded

conversation were admissible because such evidence was being

offered to provide context.  395 F.3d at 183 (citing Crawford,

541 U.S. at 59 n.9).  Furthermore, the Hendricks Court reasoned

that Crawford provided no Confrontation Clause protection for

statements offered for a purpose other than to establish their

truth.  Id. at 184.  Indeed, in Crawford, itself, the Supreme

Court stated that the Confrontation Clause "does not bar the use

of testimonial statements for purposes other than establishing

---

[9]      Defendant Ligambi did not include page numbers in his
supplemental memorandum.  As such, the pincite references to
which the Court refers are those assigned to the memorandum when
filed with the Case Management/Electronic Case Filing system.

the truth of the matter asserted."  541 U.S. at 59 n.9 (citation omitted).

    As in Hendricks, here, the Government represented that it does not offer Stefanelli's statements on the Stefanelli Tapes for the purpose of establishing the truth of their contents.[10]  Accordingly, Defendant Ligambi's motion will now be denied in full.


## IV.  DEFENDANT FAZZINI'S MOTION TO SUPPRESS AUDIO RECORDINGS (ECF NO. 685)

    Next, the Court turns to Defendant Fazzini's motion to suppress the Stefanelli Tapes for failure to comply with Title III.  Under Title III, the Government may intercept and record communications without Court authorization provided that a party to the communication consents to the interception.  See 18 U.S.C. § 2511(2)(c); United States v. Santillo, 507 F.2d 629, 633-34 (3d Cir. 1975).

    Whether a party's consent to the recording of a conversation is "voluntary" is a question of fact, which the court must determine from the totality of the circumstances.

---

[10]    Because Stefanelli's statements are not offered for their truth, this Court need not reach whether these statements, if offered for their truth, would constitute testimonial statements.  See Hendricks, 395 F.3d at 184; c.f. Berrios, 676 F.3d at 123-24, 125-29 (applying two-step "testimonial" Confrontation Clause analysis where contents of Title III communication between two non-testifying co-defendants implicated and were used against remaining two co-defendants).

United States v. Kelly, 708 F.2d 121, 125 (3d Cir. 1983).

Consent requires a showing that "the party agreeing to a wiretap did so consciously, freely, and independently and not as the result of a coercive overbearing of his will." Id. The government need not present the testimony of the consenting party; rather, the government may establish that the party consented to the interception through other means. See United States v. Barone, 913 F.2d 46, 49 (2d Cir. 1990) (affirming that government may establish consent without calling cooperating witness); United States v. Bonanno, 487 F.2d 654, 658-59 (2d Cir. 1973) (affirming that government may establish consent through testimony of case agents without calling cooperator, and that proof of consent does not require best witness).

In his motion to suppress the Stefanelli Tapes, Defendant Fazzini argues that, because Nicholas Stefanelli is deceased and therefore unavailable to testify, the Government cannot prove that Stefanelli consented to the recording of the conversations at issue as required under Title III.

At the August 17, 2012 hearing, the Government called former FBI Agent Martin Bernstein, who worked in the agency's Organized Crime Division in Newark, New Jersey, during the investigation and acted as Stefanelli's handler. Hr'g Tr. 16:15-18:4, Aug. 17, 2012. Mr. Bernstein testified that Stefanelli agreed to cooperate with the FBI. Id. at 18:5-7. He

testified that he witnessed Stefanelli sign two consent forms in November 2009, one for telephone consensual recordings, and one for transmitter and body recordings, both of which the Government admitted into evidence. Id. at 18:15-20:23. Mr. Bernstein further testified that Stefanelli then made recordings for the FBI. Id. at 20:20. Stefanelli did so for approximately two years thereafter.

Mr. Bernstein stated that, prior to both the May 2010 and October 2010 recordings, he met with Stefanelli to give him recording devices. Id. at 23:10-13, 31:10-32:6. Mr. Bernstein also testified that after both the May 2010 and October 2010 recordings, he met with Stefanelli to retrieve the devices and review the tapes. Id. at 26:9-17, 33:17-25.

Based on former Agent Bernstein's testimony, together with the recording consent forms signed by Stefanelli, the Government has met its burden for purposes of Title III. The Government has proved that Stefanelli acted voluntarily, consciously, and freely, as demonstrated by the totality of the circumstances. The Government has not failed to do so simply because Stefanelli did not testify. See Kelly, 708 F.2d at 125; see also Barone, 913 F.2d at 49; Bonanno, 487 F.2d at 658-59. Here, the government has offered ample evidence surrounding Stefanelli's ongoing cooperation with the FBI for nearly two years. As such, Defendant Fazzini's motion will be denied.

**V.  DEFENDANT FAZZINI'S MOTION TO EXCLUDE TAPE RECORDED CONVERSATIONS MADE BY DECEASED GOVERNMENT INFORMANT NICHOLAS STEFANELLI (ECF No. 686)**

Lastly, the Court will address Defendant Fazzini's motion to exclude the Stefanelli Tapes for lack of authentication of the voices on the tapes as required by Federal Rule of Evidence 901.  Federal Rule of Evidence 901 sets forth the test for demonstrating the authenticity of physical evidence.  Rule 901 provides:  "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).[11]  While the burden is on the proponent, the Third Circuit has held that "[t]he burden of proof for authentication is slight."  Lexington Ins. Co. v. W. Pa. Hosp., 423 F.3d 318, 328 (3d Cir. 2005) (quoting McQueeney v. Wilmington Trust Co., 779 F.2d 916, 928 (3d Cir. 1985) and citing Link v. Mercedes-Benz of N. Am., 788 F.2d 918, 927 (3d Cir. 1986)).  In Lexington Insurance Co. v. Western Pennsylvania Hospital, the Third Circuit reaffirmed the standard for authentication, stating:

_____

[11]  To avoid confusion, the Court notes that it is quoting Rule 901 as it appears following the 2011 restyling of the Federal Rules of Evidence.  The restyled Rule 901 took effect on December 1, 2011, and so it governs Defendant Fazzini's motion. The Court also notes that any changes to Rule 901 were stylistic only; no substantive changes were intended.  See Fed. R. Evid. 901 advisory committee's note.

> The showing of authenticity is not on a par with more
> technical evidentiary rules, such as hearsay
> exceptions, governing admissibility.  Rather, there
> need be only a prima facie showing, to the court, of
> authenticity, not a full argument on admissibility.
> Once a prima facie case is made, the evidence goes to
> the jury and it is the jury who will ultimately
> determine the authenticity of the evidence, not the
> court.  The only requirement is that there has been
> substantial evidence from which they could infer that
> the document was authentic.

Id. at 329 (quoting Link, 788 F.2d at 928).  Ultimately, Rule
901 requires only "a foundation from which the fact-finder could
legitimately infer that the evidence is what its proponent
claims it to be."  In re Japanese Elec. Prod. Antitrust Litig.,
723 F.2d 238, 285 (3d Cir. 1983), rev'd on other grounds, 475
U.S. 574 (1986).

Voice identification may be established by lay
opinion, by a person who has heard the voices of the speakers
and is familiar with the voices.  See Fed. R. Evid. 901(b)(5);
Gov't of Virgin Islands v. Martinez, 847 F.2d 125, 128-29 (3d
Cir. 1988) (finding that investigative agent who heard defendant
speak during arrest properly identified defendant's voice on
recording).  Voice identification can also be established by
self-identification of the speakers, circumstantial evidence, or
both.  See United States v. Alper, 449 F.2d 1223, 1229 (3d Cir.
1971) (holding that voice identification of telephone
conversation can be established by circumstantial evidence
surrounding call).

In his motion to exclude the Stefanelli Tapes,

Defendant Fazzini argues that, because Nicholas Stefanelli is

deceased and therefore unavailable to testify, the Government

cannot authenticate the Stefanelli Tapes pursuant to Federal

Rule of Evidence 901.  Def. Fazzini's Mot. to Exclude 4.

However, Rule 901 allows authentication through a combination of

methods, including voice identification, content, and other

surrounding circumstances.  See Fed. R. Evid. 901(b)(5);

Martinez, 847 F.2d at 128-29; Alper, 449 F.2d at 1229; see also,

e.g., United States v. Green, 40 F.3d 1167, 1173-74 (1994)

(affirming trial court's admission of transcripts based on

variety of evidence, including self-identification,

identification through nicknames, and surveillance).

During the hearing on August 17, 2012, the Government

presented both direct and circumstantial evidence to

authenticate the voices on the Stefanelli Tapes, including voice

identification, surveillance team identification, and self-

identification by various participants.  First, former agent

Bernstein testified that he participated in the surveillance of

the locations at which both the May 2010 and October 2010 tapes

were recorded.  Hr'g Tr. 24:5-25:13, 33:2-8.

Mr. Bernstein then provided the context for these two

recordings.  He explained that the May 2010 tape recorded a

lunch meeting between members of the New York Gambino LCN Family

and members of the Philadelphia LCN Family, at the La Griglia Restaurant, in Kenilworth, New Jersey.  Id. at 22:18-25:25.  Mr. Bernstein testified that members of the surveillance team—who included Special Agent Jeffrey Tarken, from the New York FBI office, and Special Agent John Augustine, from the Philadelphia FBI office—identified Defendants Licata and Fazzini, as well as Gambino LCN Family members John Gambino, Joe Gambino, Michael Roccaforte, Alphonse Trucchio, and Lorenzo Mannino, at the meeting.  Id. at 24:5-25:25.  Mr. Bernstein stated that the meeting lasted approximately five hours.  Id. at 24:25-25:13.

Mr. Bernstein further explained that the October 2010 tape recorded a dinner meeting at another restaurant in New Jersey, the American Bistro.  Id. at 32:13-33:1.  Mr. Bernstein testified that during this surveillance operation, the team identified Defendants Fazzini and Licata at the meeting.  Id. at 33:9-13.

Mr. Bernstein testified that, in reviewing the tapes, he was able to identify the voice of Defendant Licata.  Id. at 58:25-59:2.  He further testified that, while reviewing the tapes with Stefanelli, Stefanelli was able to identify the voices of Defendants Ligambi, Staino, Fazzini, and Licata, as well as the voices of the New York Gambino LCN Family representatives, John Gambino, Joseph Gambino, Lorenzo Mannino,

Alphonse Trucchio, and Michael Roccaforte.[12]  Id. at 28:12-31:9,

56:2-59:4.

Separate from Stefanelli's voice identifications,

Special Agent John Augustine, of the Organized Crime Division in

---

[12]     Counsel for Defendant Licata asserts that using Mr.
Bernstein's testimony regarding Stefanelli's voice
identifications as the basis for authenticating the voices on
the Stefanelli Tapes violates the Confrontation Clause, as
Stefanelli is deceased and cannot testify at trial.  Id. at
65:4-11.  In support, counsel referenced dicta in footnote 5 of
the Berrios opinion, which states:

> Of course, it is possible that participants in a
> recorded conversation might be aware that they are
> being recorded, and intentionally incriminate another
> individual.  By no means are we establishing a
> categorical rule:  simply because we have found some
> Title III recordings to be nontestimonial does not
> mean that no Title III recordings can qualify as such.
> Rather, each statement should be scrutinized on its
> own terms to determine whether it exhibits the
> characteristics of a testimonial statement.  See
> Bryant, 131 S.Ct. at 1156 ("To determine whether the
> 'primary purpose' of an interrogation is 'to enable
> police assistance to meet an ongoing emergency,' which
> would render resulting statements nontestimonial, we
> objectively evaluate the circumstances in which the
> encounter occurs and the statements and actions of the
> parties."  (quoting Davis, 547 U.S. at 822, 126 S. Ct.
> 2266)).  There may be some instances, such as where
> the primary purpose of the declarant's interlocutor
> was to elicit a testimonial statement, such that even
> if the declarant's purpose was innocent, the
> conversation as a whole would be testimonial.
> Nevertheless, we are not presented with such a
> situation here.

676 U.S. at 128 n.5.  For the reasons stated herein, the Court
need not reach a separate Confrontation Clause analysis for
Stefanelli's voice identifications, as the Government has
offered evidence independent from Stefanelli's statements
regarding voice authentications on the Stefanelli Tapes.  See
supra pp. 7-12; see infra pp. 20-23.

the Philadelphia office, testified that he was familiar with the voices of Defendants Ligambi, Staino, Licata, and Fazzini.  Id. at 70:14-71:19, 87:13-18.  Agent Augustine testified that he listened to the Stefanelli Tapes, and was able to identify each of the voices of these four Defendants heard on the tapes.  Id. at 70:3-73:2, 87:4-18.

Agent Augustine further testified that he participated in the physical surveillance of the La Griglia restaurant, the location at which the May 2010 recording occurred.  Id. at 69:23-70:2.  He testified that during this surveillance, he also recognized Defendants Ligambi, Staino, and Licata.  Id. at 70:3-7.

Agent Augustine testified that he was not able to personally identify the voices of the New York Gambino LCN Family representatives.  Id. at 87:13-88:4.  However, he testified that in the recordings, these participants self-identify themselves.  Id. at 87:19-24

Special Agent Jeffrey Tarken, who specializes in investigating the New York Gambino LCN Family, also testified during the hearing.  Although he did not listen to the recording thereafter, Agent Tarken testified that he participated in the May 2010 tape surveillance operation, and that he observed John Gambino, Joseph Gambino, Lorenzo Mannino, Alphonse Trucchio, and Michael Roccaforte at the La Griglia restaurant.  Id. at 64:2-

20

66:10.  Agent Tarken further testified regarding the rank and known nicknames of these individuals.  Id. at 64:14-66:6.

In the May 2010 tape, itself, members of the New York Gambino LCN Family are introduced, and respond when introduced by name, and known nickname or title.  For example, the voice identified in the transcript as "Michael Roccaforte AKA Anthony" responds to "How are you Ant?" and later to "Anthony."  Gov't's Ex. 2 at 1, 4.[13]  The voice identified as "John Gambino" responds to "Hey, John.  How you doing?" and proceeds to speak after introduced as a "caporegime," or captain, the title to which Agent Tarken testified.  Id. at 3-4.  The voice identified as "Joseph Gambino" responds to "meet . . . Joey Gambino," and continues to respond after similar introductions to others at the meeting.  Id. at 4-5.  The voice identified as "Alphonse Trucchio" is introduced as "Ally," the nickname to which Agent Tarken testified, and Trucchio later responds to that nickname. Id. at 5-6.  Lastly, the tape includes the introduction of "Lorenzo," and the voice of already-identified Defendant Fazzini stating "Lorenzo.  Pleased to meet ya."  Id. at 5.  Shortly thereafter, this voice, identified as "Lorenzo Mannino," participates in a conversation in which the other responding voices were separately identifiable as belonging to Stefanelli,

_____

[13]     The Government did not include page numbers in its Annotated Exhibits.  As such, page references follow the order in which the pages were presented.

John Gambino, and Defendants Licata and Ligambi.  Id. at 3.
Although less clear than the others, based on context and
process of elimination, this dialogue lends support to the voice
identification of Lorenzo Mannino.

To summarize, the Government has provided the
following evidence in support of authenticating the voices on
the Stefanelli Tapes, independent from Stefanelli's
identifications:

| Participant | Voice Identification | Physical Identification | Self-Identified by Context[14] |
|---|---|---|---|
| Joseph Ligambi | Agent Augustine | Agent Augustine | |
| Anthony Staino | Agent Augustine | Agent Augustine | |
| Joseph Licata | Agent Augustine Mr. Bernstein | Agent Augustine | |
| Louis Fazzini | Agent Augustine | | |
| John Gambino | | Agent Tarken | Self-identified by context |
| Joseph Gambino | | Agent Tarken | Self-identified by context |
| Alphonse Trucchio | | Agent Tarken | Self-identified by context |
| Michael Roccaforte | | Agent Tarken | Self-identified by context |
| Lorenzo Mannino | | Agent Tarken | Self-identified by context |

---

[14]      Self-identified by context refers to the statements
made during the May 2010 meeting, discussed in pages 21-22,
supra, which could aid a fact-finder's determination that the
voices on the Stefanelli tapes identified as the New York
Gambino LCN representatives John Gambino, Joseph Gambino,
Alphonse Trucchio, Michael Roccaforte, and Lorenzo Mannino, in
fact belong to these individuals, as the Government claims.

Considering the above evidence, taken together, the Court is satisfied that the Government has met the minimal showing required by Rule 901; namely, the Government has laid a foundation from which a fact-finder could legitimately infer that the evidence is what its proponent claims it to be. Therefore, Defendant Fazzini's motion will now be denied in full.[15]

## VI.  CONCLUSION

For the reasons set forth above, the Court will deny in full Defendant Ligambi's Motion to Exclude Recordings Made by Deceased Government Informant Nicholas Stefanelli.[16]  The Court will also deny Defendant Fazzini's Motion to Suppress Audio Recordings.  Lastly, the Court will also deny in full Defendant Fazzini's Motion to Exclude Tape Recorded Conversations Made by Deceased Government Informant Nicholas Stefanelli.[17]  An appropriate order will follow.

---

[15]     As the Government provided alternative evidence identifying the voices on the Stefanelli Tapes, apart from Stefanelli's own voice identifications, Defendant Licata's challenge also fails.

[16]     See supra n.1

[17]     See supra n.1