IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| | : | NO. 09-00496-01, -03, -04, |
| v. | : | -05, -08, -11, -14, |
| | : | |
| JOSEPH LIGAMBI, | : | |
| ANTHONY STAINO, JR., | : | |
| JOSEPH MASSIMINO, | : | |
| GEORGE BORGESI, | : | |
| DAMION CANALICHIO, | : | |
| GARY BATTAGLINI, and | : | |
| JOSEPH LICATA, | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                NOVEMBER 2, 2012

## I. INTRODUCTION

Several Defendants have challenged the admissibility of the Government's proffered expert testimony regarding the identities and alleged La Cosa Nostra ranks of other, non-defendant individuals mentioned in a consensual recording made by then-acting government informant, Nicholas Stefanelli, at the La Griglia Restaurant, in Kenilworth, New Jersey, on May 19, 2010 (the "La Griglia Tape").[1] In addition to oral objections

---

[1] The Court assumes familiarity with this recording, as the recording has been the subject of various pretrial motions and memoranda. For further background discussion, see the

raised during trial, Defendant Borgesi filed a Motion in Limine to Restrict the Testimony of the Government's Expert.[2]

In considering Defendant Borgesi's motion in limine, the Court must decide whether admitting the Government's proffered expert testimony comports with the Third Circuit's holding in <u>United States v. Gibbs</u>, 190 F.3d 188 (3d Cir. 1999). For the reasons that follow, the Court will deny Defendant Borgesi's Motion in Limine to Restrict the Testimony of the Government's Expert.[3]

---

Court's Memorandum, dated September 13, 2012, ECF No. 883, 2012 WL 4050761, at *1-3 (E.D. Pa. Sept. 14, 2012).

[2] As Defendants advanced similar arguments, the Court will consolidate and construe collectively Defendants' oral objections and Defendant Borgesi's written motion in limine.

[3] From the bench, the Court instructed the parties as to the applicability of its ruling. First, the Court ruled that the following evidence would be admissible: (1) the identification of a non-defendant person referred to in the La Griglia Tape, and that person's rank within the LCN, in reference to the recorded conversation; (2) an explanation of a term or phrase that, although ordinary, has particular meaning in LCN vocabulary; and (3) an explanation of a referenced practice and whether such practice is deemed consistent with LCN protocol.

Second, the Court ruled that the following evidence would <u>not</u> be admissible: (1) the identification of Defendants or their respective ranks within the LCN; and (2) an opinion regarding a speaker's intent or thoughts based on what the speaker said.

In short, the Court summarized, it is permissible for the expert to testify as to what a term means within the context of the conversation, but not what the speaker meant to say. The expert's testimony is, of course, subject to cross-examination

## II. BACKGROUND

Defendant Borgesi is one of fourteen Defendants charged in a fifty-two count Third Superseding Indictment. ECF No. 723. This case emerged from a criminal investigation spanning approximately ten years and was twice designated a complex case due to the number of Defendants and the nature and quantity of evidence, which includes over 14,000 intercepted wire and oral communications. See ECF Nos. 177, 520. Among other counts, Defendants are charged with conspiring to conduct and participate in the conduct of the affairs of the criminal enterprise, the Philadelphia La Cosa Nostra ("LCN") Family, through a pattern of racketeering activity and through the collection of unlawful debts. Seven Defendants are currently on trial.[4]

During discovery and in accordance with the Court's Third Scheduling Order (ECF No. 521), dated May 15, 2012, the Government submitted its Pretrial Tape List, identifying the

---

regarding the basis of the expert's knowledge. However, Defendants may not argue that the expert did not or was not able to identify Defendants.

[4] The case was severed between those defendants charged with violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the "RICO defendants," and those who were not charged with RICO violations, the "non-RICO defendants." Of the eleven RICO defendants, seven proceeded to trial (four have pleaded guilty). The non-RICO defendants' trial will be scheduled after the RICO defendants' trial has concluded.

recordings of intercepted communications that the Government may introduce in its case-in-chief. Gov't's Tape List, ECF No. 650. This list included the La Griglia Tape. Id. Thereafter, the Government provided transcripts of the La Griglia Tape, which Defendants had an opportunity to review. Trial began on October 9, 2012.

The La Griglia Tape includes references to several otherwise unidentified individuals, including, for example: Lance; Blaise; Eric; Joe Grande; Charlie White; Frankie Narducci; and Joey Pung. La Griglia Tape Tr., Segment 2, 8:9-11:15, May 19, 2010. The Government has proffered expert testimony regarding the identities and alleged LCN ranks of these non-defendant individuals. The basis of the expert's opinion regarding the above-referenced category of individuals includes, in part, reliance on court documents, judicial opinions, Pennsylvania Crime Commission reports, information from the New Jersey State Commission on Investigations, and the like, all of which was made available to Defendants during discovery. See Order 3, Aug. 21, 2012, ECF No. 816.

Several Defendants voiced oral objections to this expert testimony during trial, on October 31, 2012, at sidebar.[5]

---

[5] Apparently, Defendants do not object to the more traditional use of expert testimony to "translate" certain ordinary words into LCN terminology.

After hearing oral argument, the Court permitted the parties to file supplemental written submissions. Defendant Borgesi filed a Motion in Limine to Restrict the Testimony of the Government's Expert. Def. Borgesi's Mot. in Limine, Nov. 1, 2012. The Government filed a Memorandum Regarding the Admission of Expert Testimony. Gov't's Mem., Oct. 31, 2012, ECF No. 986. This motion is now ripe for disposition.[6]

### III. DEFENDANT BORGESI'S MOTION IN LIMINE TO RESTRICT THE TESTIMONY OF THE GOVERNMENT'S EXPERT

Under the Federal Rules of Evidence, an expert may testify in the form of an opinion or otherwise where such testimony would "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Trial courts have broad discretion to admit or exclude expert testimony, based on whether such testimony would be helpful to the trier of fact. Id.; Gibbs, 190 F.3d at 211 (citations omitted).

Rules 703, 704, and 705 of the Federal Rules of Evidence govern the foundation and scope of expert testimony. Rule 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or

---

[6] The Court denied the motion from the bench, on November 1, 2012. This Memorandum memorializes and expands on the Court's rationale for denying the motion.

personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

In giving his opinion, an expert may do so without first testifying to the facts or data underlying his opinion. Fed R. Evid. 705. On cross-examination, however, the expert may be required to disclose the facts or data underlying his opinion. Id.

The Federal Rules of Evidence do not categorically prohibit expert testimony that embraces an ultimate issue in the case. Fed. R. Evid. 704(a). However, in a criminal case, an expert may not opine as to whether a defendant had the requisite mental state of the crime charged; that matter is for the trier of fact alone. Fed. R. Evid. 704(b).

In United States v. Gibbs, the Third Circuit addressed the admissibility of expert testimony to translate or interpret certain of the defendants' statements in intercepted conversations. 190 F.3d at 195. The defendants argued that the district court improperly allowed the government's expert witness to opine about the defendants' knowledge and intent. Id. at 206. In rejecting the defendants' contentions, the court

instead found that the expert had never explicitly testified to a defendant's knowledge or intent, nor did the expert's testimony compel any conclusions regarding a defendant's knowledge or intent.  Id. at 212.

In its reasoning, the Gibbs court stated as a preliminary matter, "[I]t is well established that experienced government agents may testify to the meaning of coded drug language under Federal Rule of Evidence 702."  Id. at 211 (citations omitted).  The court explained that, "[b]ecause the primary purpose of coded drug language is to conceal the meaning of the conversation from outsiders through deliberate obscurity, drug traffickers' jargon is a specialized body of knowledge and thus an appropriate subject for expert testimony."  Id.  The court concluded that such testimony is "relatively uncontroversial."  Id.

However, the Gibbs court cautioned, "It is a different matter when an agent testifies that, in light of the meanings he has attributed to certain conversations, a defendant has played a certain role in, or has certain knowledge about, a conspiracy or other offense.  Id. at 212 (citing and comparing United States v. Boissoneault, 926 F.2d 230, 233 (2d Cir. 1999) (expressing discomfort with expert testimony that draws conclusions as to the significance of conduct or evidence); United States v. Foster*,* 939 F.2d 445, 452 (7th Cir. 1991)

(holding that although certain behavior may have an innocent explanation, it is a fair use of expert testimony to offer another explanation for that behavior); United States v. DeSoto, 885 F.2d 354, 360-61 (7th Cir.1989) (everyday appearance of an activity is not an automatic bar to admission of expert testimony that may attribute a more sinister motive to the actions, though admission does require special vigilance to avoid unfair prejudice)).[7]

Accordingly, Gibbs establishes the following twin polestars: While an expert may not testify to a defendant's state of mind, expert testimony that aids the jury's understanding of "coded language" is clearly admissible. See id. at 211-212; see also United States v. Pungitore, Jr., et al., 910 F.2d 1084, 1148-49 (3d Cir. 1990) (affirming admission of expert testimony regarding structure of organized crime families).

Defendant Borgesi objects to the Government's proffered expert testimony. He argues that such testimony

---

[7] In Gibbs, however, this issue was not squarely before the court. The Gibbs court found that the expert did not testify to any of the defendants' actual intent; in fact, the expert refused to do so. Thus, the court noted, "Where an expert in a criminal case has not explicitly testified about a defendant's intent, courts have been reluctant to exclude the expert's testimony under Rule 704(b)." United States v. Gibbs, 190 F.3d 188, 212 (3d Cir. 1999) (emphasis added) (citations omitted).

8

exceeds the scope of Rule 702 of the Federal Rules of Evidence, as well as the parameters of the "decoding" function that the Third Circuit approved in United States v. Gibbs. Def. Borgesi's Mot. in Limine 2-4. He further argues that, because the expert's opinion is predicated on reports by the Pennsylvania Crime Commission and court opinions, the expert's testimony should be restricted because discussion of these sources would otherwise "undermine Defendants' right to a fair trial." Id. at 4.

The Government responds that such testimony is both within the Federal Rules of Evidence and consistent with the Third Circuit's holding in Gibbs. Gov't's Mem. 1, 3-9. The Government advocates a broader reading of Gibbs, arguing that the case's reasoning authorizing expert testimony to explain or translate code language also encompasses testimony decoding references to unknown individuals, for the purpose of assisting the jury in placing these otherwise incomprehensible references into context. Id. at 1.

The Government additionally asserts that such evidence is admissible and relevant to rebut Defendants' contention that the La Griglia meeting was merely a lawful reunion of old friends. Id. at 10-11. Ultimately, the Government contends that "translating" these names into their respective LCN roles

would aid the jury's understanding of the content and nature of the recorded conversations. Id. at 11.

In ruling on this matter, the Court relies on the following six considerations. First, whether to admit the expert testimony at issue is a discretionary choice the Court must make under Rules 702 and 703. See Gibbs, 190 F.3d at 211 (noting that per Rule 702 "trial judge has broad discretion to admit or exclude expert testimony" and that appellate court reviews decision only for "abuse of discretion" (citations omitted)).

Second, the potential inadmissibility of materials on which the Government's expert has relied in forming his opinions does not bar his testimony. According to Rule 703, the facts underlying an expert's opinion need not be admissible if reasonably relied upon by other experts in the same field. See Fed. R. Evid. 703.[8]

Furthermore, in stating his opinion the expert need not discuss, for example, the details in the crime reports or court cases he has reviewed. See Fed. R. Evid. 705. Ultimately, the Government's expert may testify to his opinions—

---

[8] In this case, in addition to his own experience as an undercover agent, the expert relied upon public documents, such as crime reports from the Pennsylvania and New Jersey crime commissions, court opinions, and other legal documents. He also relied upon conversations with Federal Bureau of Investigations undercover agents and cooperating witnesses.

even if based on hearsay or other inadmissible evidence—provided that other experts in the field would reasonably have relied on such information.  The Court finds that the materials the expert relied on in this case are the type of materials on which an expert in the field would reasonably rely.

Third, the proffered testimony is in the nature of "decoding" information.  Considered in light of <u>Gibbs</u>' first polestar, such testimony "translates" or "interprets" language in order to provide useful meaning to the words employed in the conversation.  Whether the "translation" involves ordinary words, as in <u>Gibbs</u>, or by extension, the identification of individuals and their respective ranks in an organization, as here, it serves the same purpose; namely, it assists the jury in understanding the meaning and context of the conversation at issue.

Moreover, other circuits to have considered the issue have admitted expert testimony "decoding" LCN jargon, as well as identifying and explaining the titles, ranks, and functions of various members and associates of LCN families.  <u>See, e.g.</u>, <u>United States v. Locasio</u>, 6 F.3d 924, 936-37 (2d Cir. 1993) (affirming such use of expert testimony and citing consensus among other circuits).  Though noting the dangers inherent in using such testimony—other circuits have nevertheless affirmed its use provided that the testimony is "circumscribed to ensure

that the expert does not usurp either the role of the judge in instructing on the law, or the role of the jury in applying the law to the facts before it." Id. at 939. The Court has little reason to believe that the Third Circuit, if confronted with this issue, would rule otherwise.

Fourth, the Government's proffered expert testimony does not include opinions regarding the ultimate issue of a Defendant's guilt or a Defendant's state of mind. Thus, such testimony would not run afoul of Gibbs's second polestar. Additionally, if requested, the Court would issue a limiting instruction advising the jury that it may consider the evidence only to place the conversation in context and to identify the individuals who are referenced and not as substantive evidence that the individuals identified in the tape recording (or Defendants) are members of the LCN. See Gibbs, 190 F.3d at 211 n.15 (approving trial court's use of limiting instruction regarding expert testimony).

Fifth, the Court's ruling respects the fact-based concerns raised in Gibbs. There, the court employed cautionary language when reviewing the would-be admissibility of expert testimony regarding the "roles" of the defendants themselves. Here, the Court is confronted with the admissibility of expert testimony regarding the identities and alleged LCN ranks of non-defendant individuals. Accordingly, the Government would not be

offering this expert testimony to prove that, in light of meanings the expert attributed to certain conversations, Defendants played certain roles in a conspiracy or other offense, as was the hypothetical concern in Gibbs.

And sixth, the evidence is being admitted for a proper purpose. Here, the Government seeks to rebut Defendants' contention that the La Griglia meeting was lawful and innocent. As stated above, although it did not decide the issue, the Gibbs court itself nevertheless recognized that other circuits have allowed expert testimony for this purpose. See id. at 212 (citing as examples case law from Second and Seventh Circuits).

**IV. CONCLUSION**

Based on the foregoing, the Court will deny Defendant Borgesi's Motion in Limine to Restrict the Testimony of the Government's Expert. An appropriate order will follow.